**SO ORDERED.**

**SIGNED April 9, 2026.**



_____
**JOHN W. KOLWE**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

In re:

Case No. 25-51132

Troylond Malon Wise,
_Debtor_

Chapter 13

Judge John W. Kolwe

### Reasons for Ruling and Order on Sanctions

On March 20, 2026, the Court entered an Order to Appear and Show Cause (ECF # 77) directed to Debtor's counsel, Kathleen M. Wilson ("Ms. Wilson"), based on suspicious citations and quotations in the Objection to Motion for Relief from Stay ("Objection") (ECF # 63) and Supplemental Response in Opposition to Motion for Relief from Stay ("Supplemental Response") (ECF # 67) that she filed in this matter, as well as on her routine failures to follow the Court's procedures concerning remote attendance. The Court scheduled the hearing for April 15, 2026, with a deadline of

1

April 8, 2026, to file a written response addressing whether she used generative artificial intelligence ("AI") to prepare the pleadings in question, and if so, to explain her procedures employed to assure that any information generated by AI is sound.

On March 23, 2026, Ms. Wilson filed a Response to Order to Appear and Show Cause (ECF # 79) in which she admits to all the behavior at issue in the Court's Order to Appear and Show Cause, including the use of generative AI to create the pleadings at issue. Specifically, she admits that her reference to the case *In re Garcia* in her Objection (ECF # 63), which did not include a case cite, was not only incomplete but that the intended *Garcia* case "does not support the precise proposition for which it was cited."[1] She claims that the correct legal standard is found in *In re Veal*, 450 B.R. 897, 914-15 (9th Cir. BAP 2011), i.e., she claims it stands for the proposition that "a party seeking relief from stay must demonstrate a colorable claim and that it is a person entitled to enforce the underlying promissory note."[2] Regardless of what Ms. Wilson may have intended by citing to *In re Garcia*, the Court finds that her failure to review and verify the AI-generated Objection caused her to file a false and misleading pleading in this Court.

Ms. Wilson also acknowledges that her Supplemental Response (ECF # 67) contains an AI-generated case citation to *In re Buttermilk Towne LLC* which does not resolve to any opinion. In her Response to the Court's Show Cause Order, she supplies what she claims is the correct citation but notes that even the correctly cited case "is not applicable to the legal argument which is correctly noted in *Veal*."[3] Similarly, she admits that her Supplemental Response cites to La. R.S. § 9:5774, a statute that does not exist, and she claims that she should have cited to La. Civ. Code art. 3357, *et seq.*, concerning the reinscription of mortgages.[4] Notwithstanding Ms. Wilson's explanations, her failure to review and verify the admittedly AI-generated

---

[1] *See* Response, p. 1 (ECF #79).

[2] *Id.*, p. 2.

[3] *Id.*

[4] *Id.*

2

Supplemental Response caused her to file a second false and misleading pleading in this Court.

After acknowledging her use of generative AI to produce both her Objection (ECF # 63) and Supplemental Response (ECF # 67) to the Motion for Relief from Stay, she states that she has now filed a Corrected Supplemental Response (ECF # 78) correcting her original Supplemental Response, which she asserts contains correct case citations and reiterates her legal arguments from the original pleading. The Court's issue with her original briefing was not necessarily the legal arguments she put forward, which the Court already considered and dealt with in granting the Motion for Relief from Stay, but rather with the support she cited for those arguments, which appeared to contain cites to nonexistent cases and statutes as a result of what is universally known as "AI Hallucinations." The Supplemental Opposition (ECF # 78) would change nothing, so it will be stricken, as will her Objection (ECF # 63) and Supplemental Response (ECF # 67).

The Court's Show Cause Order is premised on Fed. R. Bankr. P. 9011(b)(2), which provides: "By presenting to the court a petition, pleading, written motion, or other document—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that, to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument to extend, modify, or reverse existing law, or to establish new law." Fed. R. Bankr. P. 9011(c) authorizes the Court to sanction conduct in violation of Rule 9011(b)(2). In her Response to the Court's Order, Ms. Wilson admits she filed pleadings that contain false cases and law, which is an admission to violating Rule 9011. Thus, there is no question that a sanction should be imposed. The Court must now determine the appropriate sanction.

In one of the few published bankruptcy court opinions concerning the misuse of generative AI, *In re Martin*, 670 B.R. 636 (Bankr. N.D. Ill. 2025), the attorney in question "cited four cases for a proposition of law, but none of them exist as alleged in his brief. Worse still, none of the quotations relied upon in the [law firm's] brief are

3

actual statements written by any court."[5] The Court issued a show cause order to consider whether sanctions should be assessed under Fed. R. Bankr. P. 9011(b)(2), and (c).

For guidance, *Martin* looked to district court cases that have addressed the improper use of generative AI, noting that Fed. R. Civ. P. 11 (and by extension Fed. R. Bankr. P. 9011) at a minimum requires attorneys to "read, *and thereby confirm the existence and validity of*, the legal authorities on which they rely").[6]

*Martin* continued: "The sanctions available for violations of Rule 9011 include a nonmonetary directive, an order to pay a penalty into court, or in some circumstances an order directing the violator to pay his or her opponent's attorneys' fees. *See* Fed. R. Bankr. P. 9011(c)(4) . . . But sanctions 'must be limited to what suffices to deter repetition of the conduct or deter comparable conduct by others similarly situated.' Fed. R. Bankr. P. 9011(c)(4)."[7] *Martin* noted that courts in similar situations have imposed monetary sanctions up to $15,000 in addition to nonmonetary sanctions.[8] *See id.* at 643-46 (collecting cases). It also noted that a court may reduce attorney's fees on the ground that "the compensation to be paid to counsel exceeds the reasonable value of their services per 11 U.S.C. § 329."[9]

The attorney in *Martin* requested that the Court not sanction him and his firm on the grounds that he was unaware of the dangers of generative AI case citations, admitted his misconduct and promised not to repeat it in the future, and watched an online CLE video. The Court rejected those arguments. The Court emphasized that any lawyer should be aware of the dangers of using generative AI for legal work, but even that ignorance would be irrelevant: "Lawyers have ethical obligations not only

---

[5] *Id.* at 641.

[6] *Id.* at 642-43 (quoting *Benjamin v. Costco Wholesale Corp.*, No. 24-cv-7399, 779 F.Supp.3d 341, 347 (E.D.N.Y. Apr. 24, 2025) *(*quoting *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024) (emphasis added in *Benjamin*))).

[7] *Id.* at 943.

[8] *See id.* at 643-46 (collecting cases).

[9] *Id.* at 650.

to review whatever cases they cite (regardless of where they pulled them from), but to understand developments in technology germane to their practice . . . **The bottom line is this: at this point, no lawyer should be using ChatGPT or any other generative AI product to perform research without verifying the results. Period.**"[10]

As with other courts that have had to address the issue, *Martin* found it necessary to impose monetary and non-monetary sanctions (including a reduction of fees) as a deterrent to future behavior. The court imposed monetary sanctions in the amount of $5,500.00, reduced from an unspecified larger monetary sanction due to the attorney's admitting to the misconduct and changing his behavior, which the court viewed "as a modest sanction, and the next lawyer who does the same thing is warned that he or she will likely see a more significant penalty."[11] As a nonmonetary sanction, the court also ordered the attorney to attend an in-person CLE on the use of AI.[12]

The Court has reviewed the cases cited by *Martin*, considered the gravity of the issue, and agrees with *Martin*'s approach, which is consistent with that of other courts that have weighed in on the issue. The Court is troubled that Ms. Wilson cited AI sources without bothering to check their accuracy, especially because she used them in support of her main legal arguments. This was a flagrant abdication of her basic professional responsibilities under Rule 9011. The Court believes that both monetary and non-monetary sanctions should be imposed.

Accordingly, the Court will impose a monetary sanction of $2,750.00. This is considerably less than what other courts have imposed. The Court has decided on a lesser monetary sanction for three primary reasons. First, Ms. Wilson readily admitted to her misconduct on all grounds. Second, this is a matter of first impression in this court, and as in *Martin*, the Court intends this to serve as a warning to all

---

[10] *Id.* at 648 (emphasis added).

[11] *Id.* at 650.

[12] *Id.*

attorneys and unrepresented persons practicing in its Court that future sanctions for the problematic use of generative AI will not be so lenient. Third, as *Martin* noted, the Court may also consider as part of its sanction a reduction of attorney's fees. The Chapter 13 Trustee has filed an objection to Ms. Wilson's Application for Allowance of Attorney's Fees and Expenses (ECF # 55) in this case, and the Court will certainly be considering this misconduct at the hearing on that Application.

As to nonmonetary sanctions, the Court will require Ms. Wilson to attend six (6) hours of in-person CLE focused on the use of generative AI, including at least one (1) hour of ethics and one (1) hour of professionalism. Unless and until she provides proof of such attendance and pays the $2,750.00 monetary sanction, she will not be allowed to file any new bankruptcy case or participate in any other bankruptcy case in the Western District of Louisiana. The Court believes this sanction is fair under the circumstances and should both appropriately punish Ms. Wilson's prior misconduct and deter future misconduct.

## **Order**

**For the reasons stated herein,**

**IT IS ORDERED** that attorney Kathleen Wilson pay a monetary sanction in the amount of $2,750.00 to the Clerk of the Bankruptcy Court for the Western District of Louisiana within ten (10) days of the date of this Order.

**IT IS FURTHER ORDERED** that attorney Kathleen Wilson is barred from filing any new bankruptcy case or participating in any other bankruptcy case in the Bankruptcy Court for the Western District of Louisiana unless and until she submits proof to chambers that she has obtained six (6) hours of in-person Continuing Legal Education specifically relating to the use of artificial intelligence in the practice of law, including one (1) hour of ethics and one (1) hour of professionalism.

**IT IS FURTHER ORDERED** that Ms. Wilson's Objection (ECF # 63), Supplemental Response (ECF # 67), and Corrected Supplemental Response (ECF # 78) are STRICKEN as if they were never filed.

**IT IS FURTHER ORDERED** that the hearing scheduled for April 15, 2026, at 2:00 pm in Courtroom 5, 800 Lafayette Street, Lafayette, Louisiana 70501 is **CANCELLED** as moot.