

**SO ORDERED.**

**SIGNED April 9, 2026.**

_____
**JOHN W. KOLWE**
**UNITED STATES BANKRUPTCY JUDGE**

---

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| In re:<br>Troylond Malon Wise<br>　　　　　*Debtor* | Case No. 25-51132<br><br>Chapter 13<br><br>Judge John W. Kolwe |

### REASONS FOR DECISION

Planet Home Lending ("Planet"), as servicer for Palm Avenue Hialeah Trust ("Lender"), filed a Motion for Relief from the Automatic Stay with In Rem Relief and Relief from Co-Debtor Stay (ECF # 24), which came before the Court for hearing on March 16, 2026. Present for the hearing were Troylond Wise, Debtor, and his attorney, Kathleen Wilson, Rachel Breaux, attorney for Planet and Planet's Bankruptcy Portfolio Manager, Sharon Sargent (appearing remotely), Armistead

Long and Jean Smith, litigation counsel for Planet, and Keith Rodriguez, Chapter 13 Trustee. During the hearing the Court accepted certain documents into the record and heard testimony from the Debtor, Ms. Sargent, Mr. Rodriguez in his capacity as Trustee, and argument from counsel for the parties. At the conclusion of the hearing, the Court indicated that the Motion would be granted, including the requested in rem relief. However, since Debtor questioned whether Planet was a properly appointed servicer for the Lender at the inception of the hearing, the Court left the record open for one week to allow Planet to file documentation with the Court evidencing it as Lender's duly appointed servicer. Planet has now filed that documentation and the Court finds that Planet is the duly appointed servicer of the Lender (this issue is discussed at the end of the opinion). For the reasons stated on the record at the conclusion of the hearing, and for the following reasons, the Court will grant Planet's motion.

## BACKGROUND

The facts are straight forward and generally undisputed.[1] On December 6, 2010, the Debtor and his then wife, Antwilla Jeanlewis Wise, borrowed $43,791.06 from American General Financial Services of Louisiana (the "Lender").[2] The Loan term was 15 years, with the first payment of $629.99 being due on January 15, 2011, with the remaining 179 payments, in the amount of $553.92, being due on the same day each month. The last payment on the loan came due on December 15, 2025, just five days after this chapter 13 case was filed.

---

[1] The "Background" section of this opinion is based on the Court's examination of the documents admitted into evidence during the hearing, as referenced at ECF # 64, as well as the documents filed into the record following the hearing, as allowed by the Court to address the Debtor's argument concerning Planet's status as servicer for the Lender; the documents filed after the hearing can be found at ECF ## 65 and 75, respectively. The Court's summary is also based upon the testimony adduced during the hearing.

[2] The Debtor testified that he has been divorced from Antwilla Wise for many years, although he did not provide the specific date of his divorce. He also testified that he has not entered into a community property settlement with his ex-wife. Accordingly, the Debtor's home appears to be "former community property" under Louisiana law and is thus co-owned by the Debtor and his ex-spouse. *See* La. Civ. Code arts. 2369.1, *et seq.*

The Debtor also agreed to pay monthly amounts into an escrow account maintained by the Lender to cover the annual costs of property taxes, hazard insurance and flood insurance. The escrow payments were in addition to the monthly principal and interest payments required under the terms of the Loan Agreement.

To secure repayment of the loan, the Debtor granted a collateral mortgage over his home in Iberia Parish, Louisiana, which was recorded in the mortgage records of that Parish on or about December 6, 2010. The Debtor also executed a Collateral Mortgage Note payable to Bearer in the amount of $50,000.00 and this Note was paraphed for identification with the collateral mortgage.[3] The Debtor's home has a scheduled value of $370,000.00 and is valued by the Iberia Parish Tax Assessor at approximately $337,390.00. Thus, the Lender enjoyed a large equity cushion in the property at the time the loan was made.

The payment history attached to the Lender's Proof of Claim shows that the Debtor stopped making monthly payments on the Loan in April 2014.[4] For the period from April 15, 2014, through June 15, 2015, only $217.54 was paid.[5] The Debtor's failure to make payments also caused a deficiency in his escrow account, because the Lender was required to advance amounts to cover the annual costs of property taxes and insurance. These advances were added to the Debtor's Escrow Account as additional amounts due by the Debtor.

---

[3] The record shows that on May 28, 2015, the Mortgage and Collateral Mortgage Note were assigned by the original Lender to DLJ Mortgage Capital, Inc., C/O Select Portfolio Servicing, Inc. On June 19, 2019, DLJ Mortgage Capital, Inc. assigned the Mortgage to Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust, Not Individually but as Trustee for Pretium Mortgage Acquisition Trust. On February 6, 2023, the Mortgage was again assigned by Wilmington Savings Fund Society to ARCPE I, LLC, and on February 23, 2023, it was assigned by ARCPE I to Palm Avenue Hialeah Trust, a Delaware Statutory Trust, for and on behalf and solely with respect to Palm Avenue Hialeah Trust, Series 2014-1 ("Hialeah"). Each of these mortgage assignments were recorded in the Mortgage records of Iberia Parish. The record also shows that the Mortgage was reinscribed by an instrument entitled "Reinscription of Mortgage" that was filed in the Mortgage Records of Iberia Parish, Louisiana on July 24, 2024.

[4] Planet called Sharon Sargent, Planet's Bankruptcy Portfolio Manager, as a witness during the hearing. She verified that she prepared the payment history based on the lender's records. She also supplied the affidavit in support of the Motion for Relief.

[5] While not entirely clear from the Debtor's testimony, it is the Court's impression he fell behind in payments when he was ordered to begin making support payments to his ex-wife.

The payment history also shows that the Lender began incurring other costs associated with the Debtor's loan, which are shown on the payment history as "Recoverable Balance" with a balance of $18,890.45. Debtor's counsel questioned Ms. Sargent in detail regarding this balance. She explained that these amounts represent costs the Lender has incurred in pursuing the state court foreclosure action against the Debtor for which the Debtor is responsible under the Loan Agreement.[6]

The Lender filed a foreclosure action against the Debtor on June 25, 2015, which apparently was the impetus for the Debtor filing his first chapter 13 bankruptcy case in this court on July 16, 2015. This first case was dismissed a mere two months later, on September 25, 2015, because the Debtor failed to make plan payments. On November 18, 2015, just two months after the dismissal of the first case, the Debtor filed his second case, which was also dismissed less than six months later, on May 9, 2016, for failure to make payments. These first two cases were the start of a succession of 10 cases, including this one, filed by the Debtor over a ten-year period, (nine were filed by the Debtor and one was filed by his ex-wife and co-owner of his home). All ten cases are set forth in the table below, which shows the date each case was filed, the date of dismissal of each case, and a brief summary of the reasons for dismissal.[7] The table also shows the dates on which the Lender had a sheriff's sale scheduled in the state court foreclosure proceeding, showing a total of seven sheriff sales that were canceled by the Debtor's various bankruptcy filings.[8]

---

[6] Ms. Sargent also testified that the costs incurred by the Lender in responding to the Debtor's numerous bankruptcy cases are also included in this "Recoverable Balance."

[7] This Table is based on a Table included in Planet's Motion to Lift Stay, and a similar table prepared by Planet's litigation counsel, that was admitted into evidence as Exhibit 5. The Date of Dismissal and the reasons for the dismissal were taken from the record of each of the bankruptcy proceedings filed in this court. The Court has taken judicial notice of the filings in all prior bankruptcy cases.

[8] The Sheriff Sale dates were provided by Planet's counsel. The Debtor has not disputed that numerous sheriff's sales were scheduled in the state court foreclosure proceeding.

|  | CASE NUMBER | DATE BK FILED | Date Dismissed-with Reasons for Dismissal | Sheriff's Sale Date |
|---|---|---|---|---|
| 1 | 15-50876 | 07/16/2015 | 09/25/2015 – Failure to make plan payments | |
| 2 | 15-51494 | 11/18/2015 | 05/09/2016 – Failure to make plan payments | |
| 3 | 17-50775 | 06/19/2017 | 07/15/2019 – Failure to make plan payments | 06/21/2017 |
| 4 | 20-50021 | 01/09/2020 | 03/12/2021 – Failure to make plan payments | 01/29/2020 |
| 5 | 21-50299 | 05/18/2021 | 07/07/2022 – Failure to make plan payments | 05/19/2021 |
| 6 | 22-50437 | 07/12/2022 | 03/11/2024 – Failure to make plan payments | |
| 7 | 24-50417 *Filed pro se* | 05/22/2024 | 07/18/2024 – Failure to file a Plan and schedules; failure to make payments | 05/22/2024 |
| 8 | 24-80678 *filed by Antwilla Wise (ex-wife)* | 11/05/2024 | 04/02/2025 – Failure to make plan payments; failure to file a Plan to treat mortgage arrears; failure to file complete Schedules for liquidation assessment; failure to make payments | 12/04/2024 |
| 9 | 25-50483 | 06/03/2025 | 09/12/2025 – Debtor and Counsel failed to attend 341 meeting; Plan failed to detail how Plan payments were to be distributed to creditors; feasibility | 06/04/2025 |
| 10 | 25-51132 | 12/09/2025 | Active – According to the Trustee, the First filed Plan was "incomprehensible" (ECF # 33) and cannot be administered | 12/10/2025 |

The loan's payment history shows that during the pendency of the Debtor's third through sixth bankruptcy cases, payments were received by the Lender. These payments were sporadic and made by the Chapter 13 trustee from plan payments made by the Debtor during the pendency of those cases.[9] Despite these payments, at the time the Debtor's sixth case was dismissed on March 11, 2024, he remained contractually due for the July 15, 2017, payment. Put another way, the Debtor has only made 78 of the total 180 payments due under the terms of the Loan.

The payment history also shows that during the pendency of each of the bankruptcy cases, the Lender continued to make advances on behalf of the Debtor to cover insurance and taxes on the Debtor's home. And, while the payment history shows that a portion of the payments made by the Debtor during these cases were applied to the escrow balance, the advances made by the Lender far exceeded the payments received, thus increasing the deficiency in the Debtor's escrow balance. Moreover, the Debtor testified that he did not pay the annual premiums for insurance on his home, nor the annual property taxes, during the pendency of the Loan.

The record shows that at the time this current case was filed, the deficiency in his escrow account had grown to $70,804.73. Additionally, the accrued interest is $40,162,42, the Recoverable Balance is $18,890.45, and the unpaid principal balance is $38,452.14, which means that in 15 years the Debtor paid approximately $5,338.92 towards the principal of the loan. The grand total currently owed by the Debtor to the Lender is $168,479.64.

Turning to the Debtor's current chapter 13 case, his schedules show that his home represents the bulk of the value of his assets. As noted, he values his home at $370,000.00. His other assets, which include an old Volvo and a Peterbilt (which is not in running condition) are valued at less than $25,000.00. His only secured Debt

---

[9] Keith Rodriguez, the Chapter 13 Trustee, appeared at the Hearing on the Motion for Relief on March 16, 2026, to confirm that he had made periodic payments and to confirm that in his opinion, the Debtor would be unable to put forth a feasible plan in the current bankruptcy case.

is the one owed to the Lender, although he schedules it for an amount significantly less than the amount shown due by the Lender. He does not have any scheduled unsecured debts. At the hearing he testified that at the inception of this current chapter 13 case, he deposited a lump sum of $10,000.00 with the Chapter 13 Trustee (funds he testified he was able to set aside, or he received in refunds from the Chapter 13 Trustee when his prior cases were dismissed). The Trustee verified his receipt of these funds. However, to date he has been unable to confirm a plan, and the Trustee notes that the current proposed plan is incomprehensible and unable to be administered. The Chapter 13 Trustee also stated during the hearing that based on the Debtor's current income, it was unlikely the Debtor would be able to put forth a feasible plan that would pay the amounts owed to the Lender.

Shortly after the Debtor filed this case, the Lender moved to lift the stay as to the Debtor and Co-Debtor in accordance with §§ 362(d)(1) and (2) and 1301 of the Code, and also seeking relief under § 362(d)(4), which would make an order granting the lift of stay binding in any additional case filed by the Debtor within two years after the order lifting the stay is entered. The Debtor opposes this motion, primarily arguing that the total amount the Lender is seeking to recover for the escrow advances and accrued interest is overstated. However, the Debtor did not put forth any evidence supporting his claim that he does not owe the interest or the deficiencies in his escrow balance.

## ANALYSIS

The filing of a bankruptcy petition operates as an automatic stay of any act to "enforce any lien against property of the estate."[10] A secured creditor who wishes to foreclose upon collateral that is property of the estate may seek relief from the automatic stay by filing a motion pursuant to § 362(d), which provides that, after notice and a hearing, "the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or

---

[10] 11 U.S.C. § 362(a)(4).

conditioning such stay. . ."[11] The Lender's motion for relief from stay seeks relief pursuant to § 362(d)(1), (d)(2), and (d)(4), and § 1301 of the Code. The Court will address each of these grounds for relief.

## A.   Grounds exist for lifting the stay for cause under § 362(d)(1).

Section 362(d)(1) authorizes a court to grant relief from the stay "for cause, including the lack of adequate protection of an interest in property of [the creditor]."[12] The Bankruptcy Code does not define "cause," thus allowing courts to determine whether cause exists on a case-by-case basis.[13] This lack of specificity in the meaning of the term "cause" provides bankruptcy courts with flexibility in determining what may constitute cause for lifting the stay.[14]

Even though cause is not defined, § 362(d)(1) nonetheless provides that lack of adequate protection may be cause for lifting the automatic stay, and lack of adequate protection is the most common basis for granting such relief.[15] But, like "cause," the Code does not define the term "adequate protection." However, § 361 gives examples of what may constitute adequate protection, which includes, among other things, periodic payments to cover the "decrease in the value of [the creditor's] interest in such property" resulting from the imposition of the stay.[16] Adequate protection may also consist of other duties or conditions being placed on the Debtor's continued use of the property while the stay is in place:

> Because adequate protection is a flexible concept, it can lead to the imposition of other duties or conditions which are not directly related to the examples in section 361. . . In an appropriate case, adequate protection may be offered by indirect means, such as by requiring the

---

[11] 11 U.S.C. § 362(d).

[12] 11 U.S.C. § 362(d)(1).

[13] *In re JCP Props., Ltd.*, 540 B.R. 596, 613 (Bankr. S.D. Tex. 2015) (citing *In re Reitnauer*, 152 F.3d 341, 343 n.4 (5th Cir. 1998)).

[14] *In re Mirant Corp.*, 440 F.3d 238, 253 (5th Cir. 2006) (quoting *Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986)).

[15] 3 COLLIER ON BANKRUPTCY ¶ 362.07[3][b] (Richard Levin & Henry J. Sommer eds., 16th ed.) ("Lack of adequate protection is the most common basis for finding cause to grant relief.").

[16] *See* 11 U.S.C. § 361(1).

trustee to make payments to senior lienholders *or to pay taxes* or the expenses of operation of the encumbered property. *Adequate protection may also require properly insuring the collateral against loss or damage* and taking other steps to protect the collateral against loss or deterioration.[17]

In this case, the determination of whether the Lender's interest in the Debtor's home is adequately protected is complicated by the existence of a large equity cushion. As previously noted, the Debtor valued his home at $370,000.00 in his schedules, and the Lender does not contest this valuation. Given the total amount owed to the Lender at this time of approximately $170,000.00, the Lender appears to enjoy a $200,000.00 equity cushion in the property.

A large equity cushion is often accepted as adequate protection for a secured debt.[18] In a typical chapter 13 case, such a large equity cushion likely would provide sufficient adequate protection for the secured creditor's position. It would allow the court considerable leeway to hold a secured creditor at bay while the debtor works towards confirming a plan that both cures any pre- or post-petition defaults on the secured debt and maintains current payments under the terms of the loan, all as allowed under § 1322(b)(5) of the Code. And while the debtor would likely be allowed to cure any deficiency in the escrow account with the secured lender for taxes and insurance during the pendency of the plan, it likely would also condition the continuation of the stay on the debtor remaining current on the payment of taxes and insurance premiums during the pendency of the case, notwithstanding the large equity cushion. Even if the Debtor could not put forth a feasible plan to pay the debt, the existence of such a large equity cushion could, with court permission, provide the debtor with the option to sell the property on his own terms within a reasonable

---

[17] 3 COLLIER ON BANKRUPTCY ¶ 362.07[3][f] (citing *In re Lane*, 108 B.R. 6, 11 (Bankr. D. Mass. 1989) (The court conditioned "continuation of the stay upon the Debtor paying all real and personal property taxes."); *Carteret Sav. Bank v. Nastasi White, Inc. (In re East-West Assocs.*), 106 B.R. 767, 773 (S.D.N.Y. 1989) (A "secured creditor is entitled to receive insurance costs as part of adequate protection.")) (emphasis added).

[18] *Id.* at ¶ 362.07[3][d][i] ("Although the existence of an equity cushion is not expressly mentioned in section 361, an equity cushion is a common form of adequate protection for a secured debt.").

amount of time, as part of the plan process, in an effort to both payoff the lender and preserve the equity in the property for the benefit of the debtor.

This is not the typical chapter 13 case. This is the Debtor's tenth case since June 2015. While he has enjoyed the benefits of the automatic stay during each of these cases, he has been unable to make any progress in paying down the debt owed to the Lender. Indeed, the opposite has occurred. The Debtor's obligation to the Lender is now nearly four times more than the amount he originally borrowed. This ballooning obligation exists because the Lender has been forced to come out of pocket to cover the property taxes and the premiums for hazard and flood insurance over the past ten-plus years, and the debtor's lack of payments has further contributed to the large unpaid accrued interest balance.

Moreover, the loan matured days after this current case was filed. Thus, if the Debtor were allowed to continue in this case with the benefit of the stay, he would be required to pay the entire amount owed to the Lender over the sixty-month life of the chapter 13 plan, while also remaining current in the payment of all taxes and insurance premiums on the property.[19] All these plan, tax, and insurance payments would be in addition to the Debtor's everyday living expenses.

Given the Debtor's track record over the past ten years, and his current circumstances, the Debtor has virtually no chance of success in this current case. He was unable to maintain plan payments in any of his other cases, and based on his testimony, his circumstances have not changed. He is still working at the same job he has had over his past four cases, earning essentially the same amount of income. A review of his budget in this case shows he simply cannot afford the payments necessary to pay the Lender and pay his normal living expenses. The Chapter 13 Trustee confirmed the obvious, stating during the hearing that he had reviewed the Debtor's schedules, plan, and income records, and he believed the Debtor could not

---

[19] *See* 11 U.S.C. § 1322(c)(2).

propose a feasible plan in this case. Simply put, the Debtor's chances of proposing a feasible plan in this case, much less completing one, are remote at best.

This brings the Court back to a discussion of the equity cushion. As discussed above, equity cushions may provide parties and courts leeway for providing a debtor time to sell the home as part of a plan process to preserve some of the equity. Despite the Debtor's obvious inability to pay the Lender over the past ten years, he has never made such a proposal.

Thus, while an equity cushion does often supply adequate protection of a secured creditor's interest in property, that is not the case here. If the stay is not lifted, it is likely the Lender will be required to continue funding the costs of the taxes and insurance premiums, given the Debtor's inability to pay. Moreover, the loan has now fully matured. Under these circumstances, the Court finds the Lender is not adequately protected, and thus cause exists to lift the stay under § 362(d)(1) of the Code. Under the facts presented, a contrary finding is simply untenable.

But lack of adequate protection is not the only cause for granting relief from the stay. A lack of good faith can also provide cause for lifting the stay to permit foreclosure.[20] This determination "depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities."[21] The Fifth Circuit, in the matter of *In re Little Creek Dev. Co.*, set out a number of conditions, "[s]everal, but not all [of which] usually exist" where good faith is lacking:[22]

> Findings of lack of good faith in proceedings based on §§ 362(d) or 1112(b) have been predicated on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors rather than on any single datum. Several, but not all, of the following conditions usually exist. The debtor has one asset, such as a tract of undeveloped or developed real property. The secured creditors' liens encumber this

---

[20] *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986).
[21] *Id.*
[22] *Id.*

tract . . . Typically, there are only a few, if any, unsecured creditors whose claims are relatively small. The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court. Alternatively, the debtor and one creditor may have proceeded to a stand-still in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford. Bankruptcy offers the only possibility of forestalling loss of the property.[23]

Although all these factors are not present here, there are some key similarities. The debtor's home is by far the Debtor's most significant asset, representing $370,000.00 of the value of all his assets which total $394,997.00. The Lender's claim is the only scheduled secured claim. There are no unsecured creditors scheduled by the Debtor. The property has been posted for foreclosure not once or twice, but seven times in the past ten years. Finally, the Debtor has used bankruptcy not once, but ten times to forestall the Lender's foreclosure action in state court, which has been pending since 2015. The court finds that all these factors evidence a lack of good faith by the Debtor in filing for bankruptcy relief.

Accordingly, the Court finds cause, both for lack of adequate protection and for lack of good faith, to grant relief from the automatic stay in favor of the Lender under § 362(d)(1) of the Code.

**B.      Planet has not satisfied the requirements for obtaining relief under § 362(d)(2).**

The Lender also seeks relief from the stay under § 362(d)(2). This provision authorizes the court to lift the stay if both of the following requirements are met: (A) the Debtor does not have equity in the property **and** (B) the property is not necessary to an effective reorganization.[24] Here, it is undisputed that the Debtor enjoys a large equity cushion in the property.  As a result, the Lender is unable to satisfy the first prong of §362(d)(2), and therefore relief under that provision must be denied.

---

[23] *Id.* at 1073.

[24] 11 U.S.C. § 362(d)(2) (emphasis added).

**C.      Planet's requested in rem relief under § 362(d)(4) is warranted.**

The Lender also seeks *in rem* relief with respect to the debtor's home pursuant to § 362(d)(4), which provides that the Court shall grant relief from the stay:

> (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—
>
>> (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
>>
>> (B) multiple bankruptcy filings affecting such real property.[25]

If an order under § 362(d)(4) is recorded in accordance with applicable state law, it "shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court. . . ."[26]

Summarizing the requirements of § 362(d)(4), a secured creditor is entitled to relief under that provision if the following three conditions are met: (1) the debtor's current bankruptcy filing is part of a scheme; (2) the debtor's scheme was to delay, hinder, or defraud creditors; and (3) the scheme involves either (A) a transfer of real property without the secured creditor's consent or court approval or (B) multiple bankruptcy filings affecting the real property at issue.[27] Both the second and third conditions are disjunctive. To satisfy the second condition, the secured creditor need only show the scheme was to delay, hinder, *or* defraud creditors.[28] Similarly, "to satisfy the third condition, the creditor need only show that the scheme involved

---

[25] 11 U.S.C. § 362(d)(4).

[26] *Id.*

[27] *In re Machado*, No. 21-51329-MMP, 2022 WL 257396 at *7 (Bankr. W.D. Tex. Jan. 27, 2022) (citing *In re JCP Props.*, 540 B.R. at 619).

[28] *Id.*

either a transfer of real property or multiple bankruptcy filings affecting the real property at issue."[29]

Nearly all courts analyze the first and second conditions together—whether the debtor has engaged in a scheme *and* whether that scheme was for the purpose of delaying, hindering, or defrauding creditors. And the most difficult question to answer is whether the debtor's conduct may be characterized as a "scheme."

"Though the Bankruptcy Code does not define the word 'scheme,' other bankruptcy courts in the Fifth Circuit have interpreted it using its plain meaning as 'a plan or program of action.'"[30] Other courts outside the Fifth Circuit look to the "totality of the circumstances" to determine whether the debtor's conduct amounts to a scheme.[31] While this court agrees that a "scheme" ordinarily will involve "a plan or program of action," it finds that the "totality of the circumstances" must be assessed to determine the existence of such a plan or program of action. The Court also finds that the seven-factor test set forth in *In re Yellowman* appropriately focuses a court on the circumstances that may point to a "scheme" or "plan or program of action" to delay, hinder or defraud creditors as contemplated in § 362(d)(4).[32] Thus, this Court will look to the following seven factors to determine whether a debtor engaged in a "scheme:"

> (1) serial filings to stop a foreclosure; (2) the timing of the bankruptcy filings relative to each other, to proceedings in the foreclosure action, and to scheduled foreclosure sales; (3) lack of changed circumstances between filings; (4) failure to prosecute bankruptcy cases or to honor the obligations of a debtor in the bankruptcy cases, or other bad faith conduct in connection with the bankruptcy cases; (5) the inability to fund a plan; (6) multiple bankruptcy filings by multiple parties to protect

---

[29] *Id.*

[30] *Id.* (citing *In re Young*, 2007 WL 128280, at *9). The various tests employed by bankruptcy courts for determining whether there exists a "scheme" as contemplated in § 362(d)(4) are discussed in detail in the following article: Andrew O'Keefe *In Rem Stay Relief Motions Under 11 U.S.C. Section 362(d)(4)*, Fed. Law., Winter 2024, at 62, 64.

[31] *See e.g.*, *In re Danley,* 540 B.R. 468, 476 (Bankr. M.D. Ala. 2015) and *In re Yellowman,* 2023 WL 5658795 (Bankr. D.N.M. Aug. 31, 2023).

[32] *See In re Yellowman,* 2023 WL 5658795, at *5.

common property; and (7) failure to make any mortgage payments for a long time.[33]

All seven of these factors are satisfied here. First, the record of this matter shows the debtor has engaged in a series of ten cases that has caused the stay to be in effect as to the property for nearly ten years.[34] Second, at least seven of the ten cases were filed on the eve of a foreclosure sale. Third, the Debtor's testimony confirms that his circumstances have remained consistent, at least over the last four cases, in that he has been employed earning essentially the same income in each of these cases, thus making it unlikely he can maintain payments in this, his tenth case. Fourth, the Debtor has been unable to prosecute any of his nine prior cases by making consistent plan payments, and, at least in the last four cases, the Debtor has not complied with the requirement of filing timely schedules and plans that can be administered by the Chapter 13 Trustee. Fifth, the Debtor has consistently been unable to fully fund a plan, with virtually all his prior cases being dismissed for failure to make plan payments. Sixth, after the Debtor was barred under § 109(g) from filing a new case for six months following the dismissal of his seventh case, he was able to persuade his ex-wife and co-owner of the property to file a proceeding to stop a foreclosure sale of the co-owned property. The Debtor testified at the hearing that he and his attorney, who also represented his ex-wife in her bankruptcy case, convinced Ms. Antwilla Wise to file despite her reluctance and general unwillingness to participate in the bankruptcy process. And finally, seventh, the Debtor has not made a mortgage payment for years as he is contractually due for the July 2017 payment, and he has only made 78 of the 180 payments that have come due on the now matured note. While the Court does not believe that all seven factors must be satisfied to find the existence of a scheme, all seven of the factors are met here. Thus, the Court finds that the Debtor has engaged in a scheme to delay and hinder the Lender in its foreclosure efforts for more than a decade.

---

[33] *Id.*

[34] *See In re Lee*, 467 B.R. 906, 919-22 (B.A.P. 6th Cir. 2012) (Debtor abused the bankruptcy process through a scheme of serial filings to defraud her creditors.).

The last requirement the Lender must satisfy to obtain relief under § 362(d)(4) is to show that the scheme involved *either* a transfer of real property *or* multiple bankruptcy filings affecting the real property at issue. The record here speaks for itself. The Debtor's scheme obviously employed multiple bankruptcy filings over a course of ten years which had the effect of stopping the Lender's collection efforts for nearly eleven years.

Accordingly, the Court finds the Lender has established grounds for relief under § 362(d)(4).

**D.      Relief from the co-debtor stay is warranted under § 1301.**

The Lender also seeks relief from the co-debtor stay under § 1301. Under this statute, a creditor may obtain relief from the co-debtor stay if, among other things, "such creditor's interest would be irreparably harmed by continuance of such stay."[35] The Court finds the Lender will be irreparably harmed by the continuation of the co-debtor stay to prevent the Lender's foreclosure efforts given the history of Debtor's previous nine bankruptcy filings in the past ten years and the lack of adequate protection of the Lender's interest in the Property. Additionally, Debtor's ex-wife participated, although reluctantly, in the scheme to hinder and delay the Lender's collection efforts by agreeing to file the eighth bankruptcy case involving the Debtor's home, and this case was doomed to failure from the inception of filing. Also, the loan remains contractually due for the July 2017 payment and the loan has now matured. Finally, the Lender served the Motion on the co-debtor, and she did not file any response to the Motion nor appear at the hearing in opposition to the relief requested.

Accordingly, relief from the co-debtor stay is warranted under § 1301(c)(3).

---

[35] 11 U.S.C. § 1301(c)(3)

### E.      Planet is the Lender's Servicer.

As noted in the opening paragraph of this opinion, the Debtor, just prior to the start of the hearing on the Lender's Motion, filed a supplemental opposition to the Motion, raising for the first time Planet's authority as servicer of Hialeah's loan to the Debtor.[36] To address any potential standing issues, the Court left the record open for one week, until March 23, 2026, to allow Planet an opportunity to supplement the record by filing evidence of its authority as servicer for Hialeah, and to show Planet possessed the original loan documents.

Planet supplemented the record of this matter on March 17, 2026, by filing a Limited Power of Attorney, which evidences the appointment of Planet as the servicer of loans for Hialeah.[37] This instrument authorizes Planet to represent Hialeah's interests in numerous matters, including foreclosure and related proceedings. Planet again supplemented the record on March 19, 2026, by filing certified copies of the original mortgage, note with allonge, loan security agreement, assignment, and reinscription, all of which are filed in the state court foreclosure action that has been pending since 2015; Planet also filed the executory process petition into the record.[38] Based on this documentation, the Court finds that Planet is the servicer for Hialeah, and thus has the authority to represent its interests in this action.

### CONCLUSION

The record of this matter fully supports lifting the stay as to the debtor and co-debtor, as authorized under §§ 362(d)(1) and 1301. The record also fully supports granting in rem relief in favor of the Lender under § 362(d)(4). Over the course of ten bankruptcy cases (including this one) and ten-plus years, the Debtor has held the

---

[36] *See* Obj. to Mtn. for Relief from Stay, Mtn. for Relief from Co-Debtor Stay, (03/16/2026), ECF # 63 (*subsequently stricken by* Reasons for Ruling and Order on Sanctions, (04/09/2026), ECF # 84; *see also In re Lee*, 467 B.R. 906, 915-17 (B.A.P. 6th Cir. 2012) (Debtor raised the issue of standing for the first time on appeal and the argument was found to be meritless.)

[37] *See* Support Document (Limited Power of Attorney) to Motion for Relief from Stay, Motion for Relief from Co-Debtor Stay, (03/17/2026), ECF # 65.

[38] *See* Support Document to Affidavit, (03/19/2026), ECF # 75.

Lender at bay, while at the same time the amount he owes the Lender has ballooned from the original amount financed of $43,791.06 to nearly $170,000.00. His circumstances have not changed such that he has any chance of success in paying the Lender for the now matured loan in this case. And while the Court is sympathetic to his interest in a large equity cushion, he has not proposed a plan, or made any other proposal, that would result in an orderly sale of his home that would both pay off the Lender and preserve his equity interest.

Accordingly, Planet's Motion (ECF # 24) is granted. Planet shall submit an order in conformity with the Court's ruling within ten days from the date of this opinion.